UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONALDY GONZALEZ
GONZALEZ,

        Petitioner,

    v.                       Case No.:  2:26-cv-01544-SPC-KRH

TODD BLANCHE *et al.*,

        Respondents,

_____/

## OPINION AND ORDER

Before the Court are petitioner Ronaldy Gonzalez Gonzalez's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 6), and Gonzalez Gonzalez's reply (Doc. 7).

Gonzalez Gonzalez is a native of Cuba who was paroled into the United States on June 9, 1996.  An immigration judge ordered him removed on September 9, 2008, following convictions for manufacturing cannabis, possession of drug paraphernalia, and theft.  Immigration and Customs Enforcement ("ICE") was unable to execute the removal order, so it released Gonzalez Gonzalez under an order of supervision on June 28, 2010.  He complied with all reporting requirements, and he has no subsequent criminal history other than traffic infractions.  He currently resides in Florida with his U.S. citizen wife and three U.S. citizen children.  On April 21, 2026, roving Border Patrol agents arrested Gonzalez Gonzalez during a traffic stop because

of his immigration status. An agent issued a warrant of removal/deportation a couple hours later. Gonzalez Gonzalez has been detained in Alligator Alcatraz since then.

Gonzalez Gonzalez claims his detention violates his due-process rights because there is no significant likelihood of removal in the reasonably foreseeable future, and because the government did not provide an explanation for his detention or an opportunity to contest it. In response, the government challenges the Court's jurisdiction and defends detention under the *Zadvydas* framework, but it does not claim ICE afforded Gonzalez Gonzalez due process when it arrested and detained him.

Before addressing the merits of Gonzalez Gonzalez's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first points to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision

or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Gonzalez Gonzalez does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Gonzalez Gonzalez challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Gonzalez Gonzalez's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

The Court turns to the merits of Gonzalez Gonzalez's habeas claims. His detention is unlawful for two reasons. First, ICE arrested and detained him without due process. The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors

when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Gonzalez Gonzalez's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. The government's actions gave Gonzalez Gonzalez no opportunity to contest the reasonableness of his detention. ICE did not give Gonzalez Gonzalez notice of the reason for his detention or an opportunity to address it. What is more, the Court recognizes significant value in the safeguards established by 8 C.F.R. § 241.4(l) and § 241.13(i), the regulations governing revocation of orders of supervision. Those safeguards include contemporaneous notice of the reason for revocation and a prompt informal interview to address the reason. Neither occurred here. Without notice and an interview, there is nothing to ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress. Third, while the government has a legitimate interest in

executing removal orders, ICE does not show how timely compliance with § 241.4(l) or § 241.13(i)'s notice and interview procedures would have burdened that interest.

Gonzalez Gonzalez's detention is also unlawful under the *Zadvydas* framework. "Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. 678, 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day

removal period plus an additional 90 days.  *Id.*  Courts use a burden-shifting

framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe
> that there is no significant likelihood of removal in the reasonably
> foreseeable future, the Government must respond with evidence
> sufficient to rebut the showing.

*Id.*

The government argues Gonzalez Gonzalez's petition is premature

because his current detention has not exceeded 180 days.  They assume a six-

month presumptively reasonable period of detention starts each time a

noncitizen is detained.   That assumption is inconsistent with *Zadvydas*.  It

would effectively allow DHS to detain noncitizens indefinitely and avoid

judicial scrutiny by releasing and re-detaining them every 180 days.  As the

Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for

establishing a presumptively reasonable '6-month period' for detention

pending removal supports our conclusion that this period commences at the

beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052

n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention

has expired, *Zadvydas*'s burden-shifting framework applies.   Gonzalez

Gonzalez has carried his initial burden by showing a good reason to believe

there is no significant likelihood of removal in the reasonably foreseeable

future.  ICE cannot remove him to Cuba, and no other country has given Gonzalez Gonzalez permission to immigrate.  The burden thus shifts to the government.  ICE claims it intends to remove Gonzalez Gonzalez to Mexico, but it has taken no steps to in that direction, and it offers no evidence the Mexican government is likely to accept him.

The Court finds no significant likelihood Gonzalez Gonzalez will be removed in the reasonably foreseeable future.  He is entitled to be released from detention under *Zadvydas*.  If removal becomes likely in the reasonably foreseeable future, ICE can detain Gonzalez Gonzalez to "assur[e] [his] presence at the moment of removal."  *Zadvydas*, 533 U.S. at 680.  If ICE re-detains Gonzalez Gonzalez, it must afford him the process due by following the applicable regulation.

Accordingly, it is hereby **ORDERED:**

Ronaldy Gonzalez Gonzalez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Gonzalez Gonzalez within 24 hours of this Order and facilitate transportation from the facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on May 22, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record